we hear from we'll hear a sing again Cigna thank you your honors good afternoon may it please the court my name is David Goldsmith I represent the plaintiffs and the appellants in this securities class action appeal this matter comes before this court on the dismissal of our consolidated complaint on grounds of failure to plead falsity and see enter on a 12 b6 motion to dismiss this comes before the court on de novo review and we are taking the position that the district judge judge Bryant was wrong to our first contention your honors is that the district court looked at the falsity question essentially backwards that's what we called in our brief immateriality by hindsight the question on falsity your honors is whether the complaints allegations raise an inference that the compliance programs and infrastructure at Cigna Corporation were as much of a problem before March 2015 no later than March 2015 which is around the time that the last misstatement was made in the 10k for 2014 as as it was and in other words as bad as it was we allege in October of 2015 which is when the CMS the Centers for Medicare and Medicaid Services conducted the on-site audit for two weeks at Cigna's offices this was the this was the audit your honors that according to the letter of January 2016 then resulted in the intermediate sanctions so there was an on-site order for 2016 from which the CMS was concluded that the compliance was a disaster and it was widespread and it was systemic and up and down and across and then they had the intermediate sanctions so the question your honors is if you if you know that the compliance was a disaster in October 15 can you then infer that it was also a disaster in and around the end of February of 2015 which is only about seven or eight months before and our contention is that you can the the CMS letter which is by the way was attached to our complaint was also in the record of course tells you that the the problem here was directly related to the acquisition of HealthSpring didn't happen on its own this was this was you know related to or not just related to but it was caused by Cigna's acquisition of the HealthSpring corporation which closed in January of 2012 HealthSpring was a had never been sanctioned by CMS even once so unlike Cigna HealthSpring had an absolutely clean compliance record but once the the acquisition closed and they tried to start putting together the compliance programs and compliance infrastructure things didn't work out and this is when Cigna started to receive all of these these notices and that's problems though were in HealthSpring in which they had acquired the business of HealthSpring rather than the previous business no sir because HealthSpring as a when HealthSpring was its own company based in Tennessee it never received it was it was a private Medicare insurer it never received and we allege this it never received a CMS notice of non-compliance in 17 years of operations not even once so it was an expert if you will at really good at it they were run by this man Mr. Frisch who's one of the one of the defendants but then when they got bought out by Cigna for four billion dollars this was the biggest deal that Cigna had ever done to that point that is when the the problems began to occur and a flood of notices began to come into Cigna's offices or Cigna dash HealthSpring if you will which were Cigna employee who was the designated Medicare compliance officer they pushed out the the HealthSpring Medicare compliance officer and replaced him with Mr. Appel who was a Cigna compliance officer. By the time of the 2014 10k in compliance we allege 10 but yes 9 or 10 in your in your reply brief you say that the problem is that these notices were quote were not the real problem I I had thought that part of your claim for materially false statement was the failure to disclose regulatory actions by the CMS. No your honor the claim what I meant by that statement was that one of let me let me answer it this way and if this isn't sufficient I'll answer it different way one of the things that the defendants contended in their motion to dismiss was that we were contending in our complaint that Cigna should have disclosed every single notice as it came in and that's not our contention at all. Our contention is that when when Cigna claimed in their 10k's that they were compliant that they had policies and procedures and so forth that they were not and so they were misleading. The failure to disclose was the failure to discuss a reasonably effective compliance program. Fair enough your honor. I'm just asking. I think that's right I mean we never we never said we're not saying that they had to say we got a notice on this date a notice on this date that's that's silly that doesn't help so what I meant by the the statement that your honor read from the reply brief is that they didn't have to say that we got a notice here we got a notice there I mean the problem wasn't getting a notice getting a notice was a symptom of the disease the disease was that their their compliance function was a mess and and it was a mess it was a systemic mess it wasn't a mess just you know there wasn't just this one little type of compliance that they couldn't get right it was a complete mess we allege and maybe you could be helpful at least to me mr. Goldsmith you're claiming that statements in the in the 10k forms for 2013 and 2014 were materially misleading right yes sir just help me tell me what what statements in particular were materially misleading yes your honor so so starting with the 2013 and maybe if you if it's going to be more than one why don't you tell stop after each one because I'll have a an interstitial question for you well it happens to be a fairly tight set of statements so I'm happy to do that so so in the so as your honor correctly said there's two 10ks that's it there's also a code of ethics but we can we can get to that I'm more interested in talking about the 10ks so the 10ks there's a 2013 10k and looking at page 215 of the joint appendix if that's helpful to the court there's a statement under the heading regulation that says we have established policies and procedures to comply with applicable requirements okay that is one that's that statement you claim is materially misleading yes your honor now are you claiming that they're literally false I am claiming that they are false and misleading and that at a minimum they are half truths in what I mean it it may be true your honor and if I think this is what your honor is getting at and I'm and I'm well aware that your honor is written on these issues a whole number of times it may be true and we'll have to see in discovery that Cigna has policies and procedures to comply with applicable requirements they've got a binder they've got this but this this statement doesn't just tell the reasonable investor that they have policies and procedures I mean investors don't care about that they want to know whether they are complying with applicable requirements and our position is that this statement told a reasonable investor at least some reasonable investors that they were complying with applicable requirements at least to a reasonable degree I mean we don't we don't assert 100% perfect compliance we never have all right so let me put it to you another way okay why are these let's just take that statement why is that statement materially misleading the statement is materially misleading because at the time that the statement was issued they were were not complying with applicable requirements specifically return referring to the CMS Medicare requirements though to a reasonable degree they were not they were not reasonably in compliance with CMS requirements and if they had policies and procedures in a book all well and good but they were not complying with them to a reasonable degree the their their compliance structure from from from day one if you will was a disaster you're saying the implication is they were complying not only that they had policies and procedures right I mean and I I think this right yes sir and I think you know I our contention is that this language was written cleverly in order to in order to have that kind of message you know I mean it's true that they don't say we are in compliance or we are in substantial compliance and that is true but but our contention is that the language like this and other language that we allege is false and misleading was you know absolutely conveyed to a reasonable investor that they were reasonably in compliance with the regulations at at issue and we have cases that we cite in our brief to support that there's the bioscript case there is the Barrick Gold case you know it is not it is not the case that you have to say we are in compliance or we are in substantial compliance in order to satisfy this I mean you know a panel of this court held in SEC versus Gabelli that half truths are just as misleading as as you know as as literal statements that a literal statement can be misleading or a literally true statement excuse me can be misleading and another case called Klein Klein Min V Eland Corp by a panel of this court said the same thing even if even that if you have two reasonable investors and one of them reads a statement this way and one of them reads a statement that way and the plaintiff the plaintiff interprets the statement one of those ways that that that a complaint can can can proceed so that that's our basis doesn't the elimination of that language in the 2014 10k lead itself to an inference that the company was sufficiently uncomfortable with that affirmative statement that it took it out yes I think then and and one of the most important facts in this case your honor and I thank you for raising it is the deletion of that language in the next year's 10k our position is that the deletion of that language actually supports falsity for both 10k's because it is as your honor said there is you know a clear inference in black and white that that that the company decided that they felt that this language was true in the 2013 10k and then for the next year's 10k they were not comfortable with the veracity of that statement and they took it out and both of the 10k's by the way were signed and certified under Sarbanes-Oxley by both the CEO and the CFO now so if they didn't have policies and procedures or and they weren't compliant with respect to 2013 then we would suggest that they weren't compliant and didn't have policies and procedures with respect to 2014 either and we we alleged that obviously for both years so we think taking it out supports falsity as to both years and we have other alleged misstatements in the in the 2014 10k and I'm happy to discuss those if the presiding judge would like me to well thank you will you reserve some time and I'll yeah I reserve two minutes giving you some extra time now we'll get some more thank thank you your honor thank you Mr. Stern Mr. Stern perhaps you could just address a question about maybe I'm confused about discovery in this case when this motion was pending can you just describe the procedural setting in which this in which the court acted absolutely Judge Cabranes so this the complaint that's before the court is the second amended complaint in this action and it was dismissed on a rule 12b6 motion by Judge Bryant in the District of Connecticut no discovery has been taken no discovery has been taken and your honor plaintiff made made an issue of the court's use of the term discovery in the portion of its decision in which Judge Bryant denied the motion for leave to amend yet again to have a fourth complaint in this action there's no confusion a plaintiff has sought to pursue this argument that the court perhaps was confused about the procedural posture Judge Bryant made very clear she understood the posture she was measuring the complaint as to whether it stated a claim the use of the word discovery while you know certainly those of us who practice think of that in terms of the federal rules she clearly was referencing the plaintiff's counsel's investigation and the reference in the in the transcript as well which is in the joint appendix beginning at page 52 clearly is in the in the context of plaintiff's plea for yet another chance to plead the complaint and Judge Bryant commenting that as asking questions as to whether more quote discovery would allow plaintiff to be able to plead the claim your honor I do want to this is a misstatements case going back to the 2013 10k yes the statement we have established policies and procedures to comply with applicable requirements if in fact Cigna had not established policies and procedures that were reasonably effective to comply with applicable requirements would that have been a material false misstatement Judge Cuddle I think the answer to that is no and that's not the claim here in any event because the claim is based on the notices that came in after this statement and the question I'm sorry go ahead your honor the the allegation is that that statement in the 10k was one of the statements that was materially false for failure to disclose that the company didn't have a reasonably effective compliance program right at that time when the statement was made understood your honor I think two answers to the question I think number one is it would not be material misleading to make the statement we have established policies and procedures to comply with applicable requirements if in fact Cigna had not established policies and procedures that were reasonably effective to comply with applicable requirements would that have been a material false misstatement Judge Cuddle I think the answer to that is no and that's not the claim here in any event because the claim is based on the notices that came in after this statement and the question I'm sorry go ahead your honor the the allegation is that that statement in the 10k was one of the statements that was materially false for failure to disclose that the company didn't have a reasonably effective compliance program right at that time when the statement was made understood your honor I think two answers to the question I'm sorry go ahead your honor I would ask the court to consider the context of that statement we are talking it's on page jay to 15 in the 10k this is not a statement about the medicare business at Cigna it's not about the health spring business this is in the general portion of the annual report title regulation and what it says in the sentence before the sentence the plaintiff challenges is the laws and regulations governing our business continue to increase each year and are subject to frequent change and then it continues we have established policies and procedures to comply with applicable requirements supposing you had no policies or procedures at all yeah somebody some somebody who writes these things wrote it right with that before I would be your honor I think in that case that's that's it clearly that would be a false statement and I would concede that would be actionable that is not what has been alleged here of course what's been alleged is that as it turned out two years after this statement when the CMS took action against Cigna they had compliance problems they had not succeeded in in their policies and procedures at least in the view of CMS at that time that's not actually what the CMS said in January of 2016 it didn't say that there is a problem that just developed they've described a situation in which the failures were widespread and systemic they said that Cigna has a long-standing history of non-compliance with CMS requirements they said that Cigna has received numerous notices of non-compliance warning letters corrective action plan plans from CMS over the past several years a number of these notices were for violations discovered during the audit which was 2015 demonstrating that Cigna has not corrected issues of non-compliance though CMS says in January of 2016 that this is a systemic problem and that it goes back over the past several years that would indicate that it goes back to the time that Cigna was making the statement that it has established policies and procedures to comply with the applicable requirements your honor respectfully I think it's a it's a thin read I I don't disagree that's what CMS said in February 2016 to January February 2016 I'm looking at what plaintiff has alleged including that CMS notice and at on a motion to dismiss is simply whether the plaintiff has stated sufficient facts from which a reasonable person might conclude that there was a that there was a false statement because of the timing your honor and and that is what judge Bryant looked at in assessing the complaint plaintiffs allegation at paragraphs 117 of the complaint is that there had been a total of more than 75 individual compliance notices and some of those are in the record at beginning at 421 in the appendix out of 75 of them nine were received up into the time of the last statement that's at issue and we have examples of those these the kind of operational issues so 66 just from the math were received after that time in 2015 when there are no statements that are challenged but put aside for a out as you got closer and closer to 2016 are we to simply discount what the CMS said that this had been got that this is a systemic problem and it's been going on for several years of course not your honor it's all part of what you and what judge Bryant looked at in assessing the complaint and the totality of it and this is why what we've what we laid out in a brief we believe this is classic fraud by hindsight what was said in January 2016 and my colleague says you can infer they knew this in February 2015 well not based on their allegations where we know the audit didn't happen the audit that led to these sanctions happened in October 2015 they they made this statement in 2016 about something that had been going on for they said several years so in order to come out your way do we have to say that the CMS was simply wrong not at all your honor again it's measured against the statements and that's why I started with this is a misstatements case a misrepresentations case not an omissions case they're alleging that these five statements in the misstatement rather than omission case say that there was a failure to disclose that the compliance program was not reasonably effective what they say your honor is that it was materially misleading to make the statements they made without saying and our compliance program is not reasonably effective so well perhaps it's what maybe it's besides the same coin I don't know your honor my point is plaintiff is not arguing that there was any point when they had an obligation in 2015 for instance when 66 notices came in that signet had an obligation to make an affirmative statement we've received 66 we've received a lot of statements we have issues with compliance that we're dealing with that's not the claim here the claim is to be measured against the statements we have policies and procedures to deal to to comply with applicable regulations we we expect to continue to allocate significant resources to compliance they claim that in the 2014 10k and as I read your brief you say we replaced it with a new disclosures regarding the worldwide regulatory regime that Cigna faced okay but when I look at your disclosure about the worldwide regulations that you face there's nothing in there that says we have established policies and procedures to comply with applicable requirements what you do is you describe lots of requirements but make no assertion as you did in the 2013 10k about what your compliance with those requirements was well so your honor I would disagree that we don't make any statement in that on that page regarding not the Medicare business but the entire 100% of sickness business not this this business unit we do not say so they did not say in 2015 for the 2014 year we have established policies and procedures what they did say and this is on page ja200 of the appendix there's paragraphs about the Medicare regulations and specifically the risks relating to audits of the Medicare business the resources that were being devoted to that and the and the risks that could arise from from adverse actions by the company's regulators so in your brief pages 13 to 14 note 7 you described the language about all of your increasing regulations but you you don't say anything about your compliance with those regulations are we to draw any inference from the fact that you did talk about that the prior year and you didn't in 2000 in the 2014 10k it's clearly true your honor that signet did not say in that second year we have established established policies and procedures I would I would submit your honor still get it never made any representations about its compliance about how it was doing about whether it was successful never made those statements never made a statement about whether it was successful in complying with the regulations that that is what plaintiffs contend the statement implied in the 2013 10k but it certainly doesn't say it and I understand my friend has said it implied it what did you say mr. Stern in what did Cygnus say in the 20 the second year your honor so that that is on ja200 your honor these are the statements that are applicable for the 2014 10k and there are several paragraphs about the risks of Medicare regulation and specifically the federal audits which of course is what came to pass here ultimately it's on the page there your honor that included the following the regulations and contractual requirements in this area are complex are frequently modified are subject to administrative discretion these risks may include reimbursement claims as well as potential fines and penalties and that's when it's followed by the statement that plaintiff here attacks which is we expect to continue to allocate significant resources to comply with these regulations and requirements and to maintain audit readiness you believe that's adequate in the circumstances based on the facts alleged in the complaint absolutely your honor there are no facts alleged including the notices that plaintiff describes in paragraph 17 that appear some samples of which appear in the record at 420 to suggest that in fact they had a systemic lack of compliance at the time those statements were made I concede CMS contended to the contrary in January 2016 that's that's significantly later no but that's what I that's what I don't quite get about the argument you said that's significantly late we would have to conclude that CMS was simply wrong with what they said in order to as a matter of law this was not a problem at the time of the 2013 and 2014 10 case I don't think you would have to conclude CMS was wrong your honor and and you would not need to make that factual determination what you would need to conclude as judge Bryant did is that there is nothing alleged by plaintiffs at the time of the statements in question known by Cigna that made the appear in some of the cases cited by my friend the this court's Jiko Solar case the bioscript case from the district court in which statements were made to the effect of we believe we significantly comply with applicable regulations or if there had been an allegation that when you made that statement as we have in some of the other cases like the Goldman Sachs case from Judge Crotty in the district court where it was specifically alleged the company had the information that directly contradicted the statement it at the time it made the statement so if Cigna had in February 2016 said we believe we are significantly compliant with applicable regulations we wouldn't have a disagreement that there could be a claim here that of course is not what what is the case not what happened I see my my time is up I'm happy to answer any other questions tell me again at what time did Cigna realize that it had major difficulty achieving a basic degree of regulatory compliance with regard to its Medicare programs I think your honor what what the record reflects what plaintiffs allege and taking those allegations as true is that beginning when the audit in October 2015 did not go well and so sometime between October 2015 and January 2016 there may be a point in time when someone could say you things hadn't gone well then it was long after in fact your honor is a the October when the audit began was eight months after the last statement that's that issue there's no contention that Cigna knew these sanctions were coming there's no contention that they knew for securities fraud complaint of course that there would be a material state material effect on the company until in fact January 2016 when the company received that letter the argument is was it only after CMS announced these severe sanctions correct your honor correct there's a there's one day difference Cigna received a letter I think it was January 21 and announced it to the public on January 22 I believe those dates might be off by a day that's 2015 16 16 correct I your your contention is that the plaintiff alleges that Cigna only became aware of its significant compliance problems in October of 2015 if that were true that would mean that the plaintiffs had pleaded themselves out of court with respect to both the 2013 and the 2014 10ks well your honor I think they have I don't think there's a claim with respect to those 10ks nor with respect to the code of ethics statements that are attacked because Cigna did not make representations they could have the words words have to matter and the and the the precedents from this court show as they do they didn't say we believe we are saying we are compliant we believe we have taken steps to become compliant the kinds of things we see in the precedents where companies have been held liable for that no but there were there are two issues right one issue is what was said and was it materially false or misleading the second issue is what did Cigna know yes as to the issue that Judge Cabranes was asking you what did Cigna know you say the plaintiff contends that Cigna only knew about major compliance problems when the audit was conducted in October of 2015 is that right if that's true then of course the plaintiff has put has pleaded the plaintiff out of court because there would have to be a knowing misstatement or omission in 2013 in the 2013 10k in the 2014 10k so I mean the plaintiff can respond in a moment but it's surprising that you think reading the complaint that the plaintiff is in 2015 about major compliance problems so Judge Codal and I find my colleague will obviously speak for the plaintiff for himself what I am contending what I what we believe and we said in our briefs is that on the point of see enter beyond conclusory assertions about what Cigna knew the facts are there were nine of these routine notices some of the which appear in the record and Judge Bryan examined them nine of them have been received during the entire period that's an issue here and plaintiff has conclusorily alleged that senior management knew about them because of reporting up requirements etc take that at face value consider it to be true for purposes of the motion here that would not render any of the statements that Cigna made up to that point false or misleading and so you're prepared to say if I can follow up on Judge Codal's question you are in fact saying that plaintiffs have pleaded themselves out of this case as it were yeah I don't think that's a phrase that I use but I think what we've argued is is that plaintiffs haven't pled the claim because the events that they contend made their statements misleading occurred after the statements you're saying is that it's the facts that pleaded them out of court they didn't yeah that's what I'm saying your honor mr. goldsmith you've reserved some time and thank you your honor I'll try to be brief there's a number of issues that that counsel for Cigna raised obviously I disagree on on the on the question that the court has been spending some time on I mean just just talking about the notices you know in terms of notice to the defendants and their their receipt of the of knowledge long before the the audit which took place in in in all October of 2015 I mean that's easy each notice was addressed to defendant Appell who was the Medicare compliance officer and and and as as my friend has pointed out a number of times a couple those are in the record and you can look at it I think there are some others that might have been addressed to mr. Fritch but every single one that we're aware of was in in his capacity you know in terms of and and the the none of the notice allegations with regard to the other three defendants are conclusory at all they're based on on the CFR they're based on Medicare regulations the as as as I think defendants have pointed out you've got a pretty complex articulated set of regulations that the that that the Department of Health and Human Services has passed on and they're very specific every single instance of non-compliance whether it's potential or actual has to go to the CEO of the company not just some division in the bowels of the company but every but the CEO of the company himself or herself so that's mr. Kordani not anybody else and it has to go to a compliance committee that has to exist mr. Fritch was on the compliance committee so that's those three defendants with respect to mr. McCarthy the CFO that I will that is not quite as cut-and-dried but we do have a lot of allegations that I think are more than enough to allow an inference to be raised he was the number two executive he was the chief financial officer he was heavily involved in the health spring deal he was certainly involved in the all the financial aspects of the company I cannot imagine that mr. Appel just as a matter of logic would not have added mr. McCarthy to the email so so you know that's we have a number of allegations on on on that front you know I think judge Bryant you know mistook the the the standard on scienter she essentially applied an actual intent standard that's not the standard the standard in Novak and and its progeny is a knowledge or or knowledge or or recklessness knowledge of facts or access to facts that contradict what you're saying we think that with the notice and other facts that we allege in the complaint including from some confidential witnesses although I don't think we even really need the confidential witnesses they're just icing on the eye on the cake I think that scienter is is adequately alleged here the fraud by a hindsight point that that that my colleague mentioned I think it was really quite wrong the the CMS letter could not be more explicit about naming specific events that happened at beforehand it's got specific years that we can you know put into a timeline that shows that these things happened before the the misstatements that are at issue and I'd like to point something out for the court and I'm on it's the same statement that we've been spoke focusing on the established policies and procedures it's on page 215 again of the joint appendix it's the 2013 10k you know my my friend correctly read the first couple sentences but if you looked down a little bit your honors will see a whole bunch of bullet points and and the company elaborates a little bit in terms of their licensing and their subsidiaries and the kinds of areas where they're supposed to have policies with policies and procedures and one of them is reimbursement or payment levels for Medicare services so there is an area which is mentioned here explicitly and in the 2013 10k which directs relate relates directly to the to the the subject matter of the case let me admit that it's not in our complaint but it's here how does that fact cut what what inference are we to draw from the fact that one of the bullet points is quote risk-sharing arrangements with providers that's the one you pointed out right no sir and I want all the one below reimbursement or payment levels for Medicare services the point I'm drawing is that the actual misstatement is not as generalized as defendants would have would would would have it I think it is more tethered to the subject matter of the litigation then then mr. Stern would would would argue and it relates to the concern that good or bad I would think that would strengthen his reimbursement or payment levels for Medicare services within the scope of the earlier paragraph right so if they say if they say we have established policies and procedures to comply with applicable requirements my contention your honor is that is telling a reasonable investor that they are complying with applicable requirements it's not it's it's it's clever language that is that is substantively the same as we are in reasonable compliance with it's it's not enough no one cares if you just say we have policies and procedures what what people want to know is if you're following them and if they're effective so so our our position your honor is that the real meaning of language like that is that they're reasonably in compliance so my suggestion your honor is that this bullet point shows you that it's not just a generalized puffing sort of statement that your honor had concerns about in the UBS case but rather that this shows a tethering to the Medicare private Medicare issues that are that this case is about all right thank you very much mr. Goldsmith thank you your honors will reserve decision and we are adjourned